# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

VALANTIN MESIDOR,
an individual,

                                               Case No.:

      Plaintiff,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,
EQUIFAX INFORMATION
SERVICES, LLC,
a foreign limited liability company,
TRANS UNION, LLC,
a foreign limited liability company,
INNOVIS DATA SOLUTIONS, INC.
a foreign for-profit corporation,

      Defendants.

_____/

## COMPLAINT

      **COMES NOW**, Plaintiff, VALANTIN MESIDOR (hereinafter,

"Plaintiff"), by and through the undersigned counsel, and hereby sues

Defendants, EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter,

"Experian"), and EQUIFAX INFORMATION SERVICES, LLC (hereinafter,

"Equifax"), (hereinafter collectively, "Defendants"), TRANS UNION, LLC

(hereinafter "Trans Union"), and INNOVIS DATA SOLUTIONS, INC. (hereinafter "Innovis").  In support thereof, Plaintiff states:

### PRELIMINARY STATEMENT

1.      This is an action for damages for violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein several creditors for accounts that were opened fraudulently in Plaintiff's name, and their representatives continued to report an account balance as past due on Plaintiff's consumer credit reports and failed to notate the accounts as disputed, despite Plaintiff's repeated meritorious disputes of the account's credit reporting with Experian, Equifax, Trans Union, and Innovis, both to the substantial detriment of Plaintiff's credit rating and in violation of the FCRA.

### JURISDICTION, VENUE & PARTIES

2.      Jurisdiction of this Court arises under 28 United States Code, Section 1331, as well as pursuant to the FCRA, 15 United States Code, Section 1681, *et seq*.

3.      Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District and the events described herein occur in this District.

4.      Venue is proper in this District as the acts and transactions described herein occur in this District.

5.      At all material times herein, Plaintiff is a natural person residing in Miami, Dade County, Florida.

6.      At all material times herein, Experian is a foreign for-profit corporation existing under the laws of the state of Ohio, with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

7.      At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 Peachtree Street, NW, H-46, Atlanta, GA 30309.

8.      At all material times herein, TransUnion is a foreign limited liability company existing under the laws of the state of Delaware, with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

9.      At all material times herein, Innovis is a for-profit corporation existing under the laws of the state of Ohio, with its principal place of business located at 250 E. Broad Street, Columbus, Ohio 43215.

3

## GENERAL ALLEGATIONS

10.     At all material times herein, Plaintiff is a "consumer" as defined by Code, Section 1681a(c).

11.     At all material times herein, Experian is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Experian disburses such consumer reports to third parties under contract for monetary compensation.

12.     At all material times herein, Equifax is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Equifax disburses such consumer reports to third parties under contract for monetary compensation.

13.     At all material times herein, TransUnion is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of

furnishing consumer reports.  TransUnion disburses such consumer reports to third parties under contract for monetary compensation.

14.    At all material times herein, Innovis is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Innovis disburses such consumer reports to third parties under contract for monetary compensation.

15.    Where appropriate herein, Experian, Equifax, TransUnion, and Innovis are sometimes collectively referred as the "Credit Reporting Agencies" or the "CRAs."

16.    At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

17.    All necessary conditions precedent to the filing of this action occurred, or Defendants waived the same.

## FACTUAL ALLEGATIONS

18.    Plaintiff is the victim of identity theft.

19.    Plaintiff discovered that his brother used his personal information to open several fraudulent accounts in his name.

20.    Upon discovering the identity theft, Plaintiff immediately filed police reports, identity theft affidavits, and disputed the accounts with the creditors and credit bureaus.

21.    On October 12, 2020, Equifax sent Plaintiff a letter in response to his credit reporting dispute indicating that five fraudulent Accounts were deleted from Plaintiff's credit file.

22.    On May 16, 2021, Plaintiff filed an FTC Identity Theft Affidavit No. 134397339 as to five fraudulent accounts.

23.    On June 8, 2021, Plaintiff filed a supplemental FTC Identity Theft Affidavit for an additional ten accounts.

24.    On June 16, 2021, Equifax sent Plaintiff a letter in response to his credit reporting dispute indicating that five fraudulent Accounts were deleted from Plaintiff's credit file, but continued to report Bank of America, Brooks Brothers, Shell/CBNA, US Bank, PNC Bank, Yamaha, Toyota, Comenity/Jared, Comenity/Mayors, SunTrust, Best Buy, Capital One, and American Express, which are all fraudulent accounts.

25.     On June 17, 2020, Equifax sent Plaintiff a letter indicating that it received Plaintiff's request to block certain information in his credit file, refusing to do the same, and indicating that Equifax would contact each company to verify the information.

26.     On July 6, 2021, Equifax sent Plaintiff a second letter in response to his credit reporting dispute indicating that six fraudulent Accounts were deleted from Plaintiff's credit file but continued to report PNC Bank.

27.     On October 26, 2021, Trans Union sent Plaintiff a letter in response to his credit reporting dispute indicating that Capital One was verified and would be reinserted on his credit report.

28.     In November 2021, Plaintiff obtained and reviewed his credit reports from each of the credit bureaus to ascertain all of the fraudulent accounts that were opened by Plaintiff's brother.

29.     On November 9, 2021, Plaintiff's brother executed two sworn and notarized declarations admitting to the fraud and listing out the fraudulent accounts.

30.     On November 21, 2021, with the assistance of counsel, Plaintiff disputed multiple fraudulent accounts and the reporting thereof by separate letters to Experian, Equifax, and TransUnion (hereinafter, the "November

2021 Dispute Letters").  Please see attached a true and correct copy of Plaintiff's November 2021 Dispute Letters, labeled as **Composite Exhibit "A".**

31.    In the November 2021 Dispute Letters, Plaintiff disputed the inaccurate reporting of multiple fraudulent Accounts, as he had done multiple times before, explaining that:

      a.    Plaintiff's social security number was stolen by a family member;

      b.    Plaintiff's social security number was used to open several fraudulent accounts;

      c.    Plaintiff has filed police reports, seven identity theft affidavits, and even requested a new social security number; and

      d.    The Accounts should be removed from Plaintiff's credit reports.

32.    Experian, Equifax and TransUnion communicated Plaintiff's November 2021 Dispute Letters November 2021 Dispute Letters to the individual creditors.

33.    Separate dispute letters with the same information were sent to

Innovis.

34.     Innovis communicated Plaintiff's dispute to the creditors of the fraudulent accounts to the creditors as further reflected below.

35.     On November 29, 2021, Innovis sent Plaintiff a letter in response to his November 2021 Dispute Letters November 2021 Dispute Letters (hereinafter, "Innovis' November Response") providing "updated information" regarding the Accounts, eleven of the fraudulent Accounts were deleted, but FNB Omaha remained.

36.     On November 30, 2021, Equifax sent Plaintiff a letter in response to his November 2021 Dispute Letters November 2021 Dispute Letters(hereinafter, "Equifax's November Response") providing "updated information" regarding the Accounts, six of the fraudulent Accounts were deleted, but Capital One Bank and FNB Omaha remained.

37.     On November 30, 2021, Experian sent Plaintiff a letter in response to his November 2021 Dispute Letters November 2021 Dispute Letters (hereinafter, "Experian's November 2021 Response") indicating that Plaintiff's disputes regarding three of the fraudulent accounts was still pending, Experian continued to report Bank of America, Capital One, FNB

Omaha, Comenity/Jared, Medical Data Systems, Inc., and PNC Bank, all of which were fraudulent accounts.

38.     In December 2021, Plaintiff disputed the fraudulent accounts directly with Synchrony, Macy's, Mayors, and Jared amongst others. The creditors responded to Plaintiff that he was liable for the Accounts.

39.     On December 3, 2021, Trans Union sent Plaintiff a letter in response to his November 2021 Dispute Letters November 2021 Dispute Letters (hereinafter, "Trans Union's November 2021Response") providing "updated information" regarding the Accounts, several but not all of the fraudulent Accounts were deleted. Trans Union continued to report FNB Omaha accounts which were fraudulent accounts.

40.     On December 15, 2021, Innovis communicated with Plaintiff indicating that the fraudulent account with Comenity Bank/ Jared, which was previously removed, was being reinserted on Plaintiff's credit reports due to the creditor's investigation. Innovis also continued to report the fraudulent FNB Omaha accounts on Plaintiff's credit report.

41.     On December 21, 2021, Trans Union sent Plaintiff a letter in response to his continued disputes of the fraudulent Accounts November 2021 Dispute Letters (hereinafter, "Trans Union's December 2021 Response")

10

providing "updated information" regarding the Accounts, specifically US Bank was being reinserted on Plaintiff's credit file as verified.

42.   On December 22, 2021, Experian sent Plaintiff a letter in response to Plaintiff's continued disputes of the fraudulent Accounts November 2021 Dispute Letters (hereinafter, "Experian's December 2021 Response") providing "updated information" regarding the Accounts, one account was deleted but Experian indicated that the furnisher reviewed three other fraudulent accounts with Capital One, PNC Bank, and US Bank as accurate.

43.   On December 29, 2021, Trans Union sent Plaintiff a letter in response to Plaintiff's continued disputes of the fraudulent Accounts November 2021 Dispute Letters (hereinafter, "Trans Union's December 2021 Response") indicating that Trans Union was deleting two fraudulent accounts from Plaintiff's credit file.

44.   On January 4, 2022, Trans Union sent Plaintiff a letter in response to his Plaintiff's continued disputes of the fraudulent Accounts November 2021 Dispute Letters (hereinafter, "Trans Union's January 2022Response") indicating that Trans Union was deleting another fraudulent account from Plaintiff's credit file.

45.    On January 6, 2022, Innovis sent Plaintiff a letter in response to Plaintiff's continued disputes of the fraudulent Accounts November 2021 Dispute Letters (hereinafter, "Innovis' January 2022 Response") indicating that US Bank and PNC Bank account was verified and would be reinserted in Plaintiff's credit file. The updated report further continued to reflect Comenity/Jared and FNB Omaha, previously disputed and/or deleted fraudulent accounts.

46.    On January 12, 2022, Innovis sent Plaintiff a letter in response to Plaintiff's continued disputes of the fraudulent Accounts November 2021 Dispute Letters (hereinafter, "Innovis' Second January 2022 Response") indicating that FNB Omaha account was verified and would be reinserted in Plaintiff's credit file. The updated report further continued to reflect Comenity/Jared and FNB Omaha, previously disputed and/or deleted fraudulent accounts.

47.    On January 28, 2022, Innovis sent Plaintiff a letter in response to his November 2021 Dispute Letters (hereinafter, "Innovis' Third January 2022 Response") indicating that the SunTrust account was verified and would be reinserted in Plaintiff's credit file.

48.     Plaintiff retained Rebbecca Goodall Law, P.A. for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

49.     As a direct result of the debt collection, communicating, and inaccurate reporting of the Account on Plaintiff's credit reports, Plaintiff has been unable to obtain financing on favorable terms. Specifically, Plaintiff has been denied a rental lease for an apartment, lost his job, has been the subject of criminal charges, and may lose his freedom.

50.     Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite his dispute efforts, Plaintiff must endure the erroneous and incorrect reporting of the Account.

51.     Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would instead pay higher interest rates in the event he could obtain financing.  In fact, Plaintiff suffered additional actual damages in the form of damage to his credit reputation, higher credit costs, other additional costs and fees, and less access to credit.

52.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of between $100 up to $1,000 in statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against National, Equifax, Experian, and/or TransUnion.

53.     At all material times herein, it would have been possible for Defendants to avoid violating the terms of the FCRA.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(as to Equifax, Experian, Trans Union, and Innovis)**

Plaintiff re-alleges paragraphs one (1) through fifty-three (53) as if fully restated herein and further states as follows:

54.     Equifax, Experian, Trans Union and Innovis are each subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

55.     Equifax, Experian, Trans Union and Innovis each willfully or negligently failed, or both, to establish or follow reasonable procedures to

14

assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding Plaintiff's Account.

56.     Specifically, despite multiple disputes in which Plaintiff directly informed Equifax, Experian, Trans Union and Innovis that Plaintiff did not owe the alleged Debt because the accounts were fraudulent; Equifax, Experian, Trans Union and Innovis continued to report the Accounts as past due did not reference Plaintiff's dispute, or notate Plaintiff's Account that the accounts were disputed as a result of fraud, causing the Account to be included when calculating Plaintiff's credit score, which caused his credit score to fall, as well as reflected derogatory information on Plaintiff's reports and correspondingly inhibited Plaintiff from obtaining an apartment lease, resulted in Plaintiff losing his job, and may result in criminal charges and loss of freedom.

57.     Further, Equifax, Experian, Trans Union and Innovis willfully or negligently failed, or both, to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when reinvestigating Plaintiff's disputes of the above-referenced inaccuracies contained in Plaintiff's credit reports.

58.     Specifically, despite Plaintiff's multiple disputes in which Plaintiff  provided Equifax, Experian, Trans Union and Innovis with additional proof that the accounts were the result of fraud, and that Plaintiff did not owe the debts; Equifax, Experian, Trans Union and Innovis continued to report the Account as past due and charged off, and did not reference Plaintiff's disputes, causing the Account to be included when calculating Plaintiff's credit score, which caused his credit score to fall.

59.     Such reporting of the Account is false, short-sighted and evidences Equifax's, Experian's, Trans Union's and Innovis' failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

60.     As a result of Equifax's, Experian's, Trans Union's and Innovis' conduct, actions, and inactions, Plaintiff lost the opportunity for housing, employment, and was denied access to his credit.

61.     Equifax's, Experian's, Trans Union's and Innovis' conduct was a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

62.     Equifax's, Experian's, Trans Union's and Innovis' individual violations of 15 United States Code, Section 1681e(b), constitute negligent or

willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

## COUNT TWO:
## FAIR CREDIT REPORTING ACT—
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(1)
## (as to Equifax, Experian, Trans Union, and Innovis)

Plaintiff re-alleges paragraphs one (1) through fifty-three (53) as if fully restated herein and further states as follows:

63. Equifax, Experian, Trans Union and Innovis are each subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), by failing to conduct reasonable reinvestigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the information in Plaintiff's credit reports and credit file.

64. Specifically, Equifax, Experian, Trans Union and Innovis willfully or negligently refused, or both, to properly reinvestigate Plaintiff's consumer report upon receiving Plaintiff's disputes, as described herein.

65. For example, despite receiving Plaintiff's November 2021 Dispute Letters, Equifax's, Experian's, Trans Union's and Innovis'

17

reinvestigations were not conducted in such a way as to assure the maximum possible accuracy of the Account on Plaintiff's credit reports.

66.    As noted above, Equifax, Experian, Trans Union and Innovis independently verified with the creditors  whether the Debt was legitimate.

67.    Furthermore, Equifax, Experian, Trans Union and Innovis continuously reported the Account as due and owing and as a  past due obligation on Plaintiff's credit reports without referencing Plaintiff's disputes.

68.    Despite receiving multiple dispute letters and FTC Identity Theft Reports by Plaintiff,  Equifax's, Experian's, Trans Union's and Innovis' reinvestigations were also not reasonably conducted in such a way as to assure the maximum possible accuracy of the Account on Plaintiff's credit reports, as some accounts were deleted while others were continuously reported, while others were deleted and reinserted.

69.    For example, Equifax, Experian, Trans Union and Innovis continued to report multiple fraudulent accounts while deleting certain others, despite multiple disputes and FTC Identity Theft Reports from Plaintiff.

70.    Such credit reporting is false and evidences Equifax's, Experian's, Trans Union's and Innovis' failure to conduct a reasonable reinvestigation of Plaintiff's disputes regarding the Account.

71.     Equifax's, Experian's, Trans Union's and Innovis' reinvestigations of Plaintiff's disputes were not conducted reasonably.

72.     E Equifax's, Experian's, Trans Union's and Innovis' reinvestigations of Plaintiff's disputes were not conducted in good faith.

73.     Equifax's, Experian's, Trans Union's and Innovis' reinvestigation procedures are unreasonable.

74.     Equifax's, Experian's, Trans Union's and Innovis' reinvestigations of Plaintiff's disputes were not conducted using all information reasonably available to the CRAs.

75.     Equifax's, Experian's, Trans Union's and Innovis' reinvestigations were *per se* deficient by reason of these failures in the CRAs' reinvestigations of Plaintiff and the Account.

76.     Equifax's, Experian's, Trans Union's and Innovis' actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

### COUNT THREE:
### FAIR CREDIT REPORTING ACT –

### VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(4)
### (as to Equifax, Experian, Trans Union, and Innovis)

Plaintiff re-alleges paragraphs one (1) through fifty-three (53) as if fully restated herein and further states as follows:

77.     Equifax, Experian, Trans Union and Innovis are each subject to, and violated the provisions of, 15 United states Code, Section 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments.

78.     Specifically, despite receiving Plaintiff's November 2021 Dispute Letters, which enclosed a copy of at least one of Plaintiff's multiple FTC Identity Theft Affidavits and an explanation that the accounts were the result of fraud, Equifax, Experian, Trans Union and Innovis failed to review and consider all information received in Plaintiff's disputes, including all relevant attachments.

79.     Further, Despite receiving multiple dispute letters and FTC Identity Theft Reports by Plaintiff, Equifax, Experian, Trans Union and Innovis willfully or negligently failed, or both, to review and consider all information received in Plaintiff's disputes, including all relevant attachments.

80.     Equifax's, Experian's, Trans Union's and Innovis' failure to

review and consider all information received in Plaintiff's dispute, including all relevant attachments, was done in bad faith.

81.     Equifax's, Experian's, Trans Union's and Innovis' actions in violation of 15 United States Code, Section 1681i(a)(4), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## COUNT FOUR:
## FAIR CREDIT REPORTING ACT –
## <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(5)</u>
## <u>(as to Equifax, Experian, Trans Union, and Innovis)</u>

Plaintiff re-alleges paragraphs one (1) through fifty-three (53) as if fully restated herein and further states as follows:

82.     Equifax, Experian, Trans Union and Innovis are each subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(5), by failing to update or delete any information that was the subject of Plaintiff's disputes as inaccurate or that could not be verified.

83.     Specifically, despite receiving Plaintiff's multiple dispute letters and FTC Identity Theft Reports, in which Plaintiff directly informed Equifax, Experian, Trans Union and Innovis that Plaintiff did not owe the alleged

Accounts because the Accounts were the result of fraud; Equifax, Experian, Trans Union and Innovis failed to update or delete information on Plaintiff's credit reports with respect to the Accounts that was either inaccurate or could not be verified, or deleted and then reinserted such information as verified.

84.     Further, despite receiving Plaintiff's multiple dispute letters and FTC Identity Theft Reports; Equifax, Experian, Trans Union and Innovis willfully or negligently, or both, failed to update or delete the information on Plaintiff's credit reports with respect to the Debt associated with the Account, namely that it was either inaccurate or could not be verified, or reinserted the Accounts without any reference to Plaintiff's disputes.

85.     As a direct result of Equifax's, Experian's, Trans Union's and Innovis' conduct, actions, and/or inactions, Plaintiff sustained damages to his credit and loss of access to credit, as well as an apartment lease, employment, and potential loss of freedom.

86.     Equifax's, Experian's, Trans Union's and Innovis' conduct was a direct and proximate cause of, as well as a substantial factor in, Plaintiff's serious injuries, damages, and harm as more fully stated herein.

87.     Equifax's, Experian's, Trans Union's and Innovis' actions in violation of 15 United States Code, Section 1681i(a)(5), constitute negligent

or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against all Defendants for maximum statutory damages for violations of the FCRA;

b.    Actual damages in an amount to be determined at trial;

c.    Compensatory damages in an amount to be determined at trial;

d.    Punitive damages under the FCRA in an amount to be determined at trial;

e.    An award of attorneys' fees and costs; and

f.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

23

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,
REBBECCA GOODALL LAW, PA

/s/ Rebbecca A. Goodall
Rebbecca A. Goodall, Esq.
Florida Bar No.:  0115344
rgoodall.law@gmail.com
P.O. Box 1304
Elfers, FL 34680
(813) 438-3695
Attorney for Plaintiff
